Our last case on the call of the docket today is case number 111-871, agenda number 24, Reliable Fire Equipment Company v. Arnold Arredondo. Good morning. Christopher Banizak of Milwaukee, Wisconsin, and I have at council table with me Robert Black of Naperville, Illinois. I'm appearing on behalf of the Plaintiff Appellant Reliable Fire Equipment Company. There are two primary issues that the court needs to address on this appeal. First issue is whether it is appropriate to protect goodwill from use by a former owner, but not a former employee. And the second issue is whether Illinois courts should evaluate the reasonableness and enforceability of the non-compete agreement based on the totality of the circumstances. With respect to the first issue, there is no reason to treat goodwill differently with respect to an owner versus an employee. This court has decided a number of cases in which it has identified goodwill and customer relationships as a protectable interest. In cases involving a sale of a business, such as Sigsbee and Herson, this court has held that goodwill is a protectable interest. Likewise, in Cockrell, this court held that protection of customer relationships through a non-compete agreement is a legitimate interest of the employer. There is no rational reason to say that goodwill provides a protectable interest in the context of a sale of a business, but not in the termination of an employment relationship. Customer relationships and goodwill are the same in both instances. Whether it is the former owner or the former employee unfairly capitalizing on the company's goodwill, the harm to the company is the same. They should be provided the same protection. Courts from numerous other states, commentators and even appellate decisions from Illinois, including a couple of cases we cited, Smithereen and Jewel Paint, have expressly found that customer relationships and goodwill do provide a protectable interest without any requirement to show permanent or near-permanent relationships. Both the lead opinion in the appellate court and the defendants in this case advocate an illogical rule where goodwill is protected from use by the former owner, but not by the former employee. There is no reason to make that distinction. The court should hold that customer relationships and goodwill do provide a protectable interest for an employment non-compete agreement without requiring any showing of permanence. Now, in spite of this Court's decisions related to the sale of a business and employment relationships, and prior decisions from the Illinois appellate courts holding that customer goodwill is a protectable interest in an employment relationship, starting in 1975 with the Kolar case, the Illinois appellate courts took a detour and held that non-compete agreements are disfavored for sales employees, and that in order for customer relationships to constitute a protectable interest, they must be permanent or near-permanent. Neither one of those principles is supported by Illinois precedent. And the reason there is no support is that the Kolar court's decision actually contradicts prior precedent, and that the Kolar court's decision actually contradicts prior precedent, which never limited protection of customer relationships to those that are permanent or near-permanent. Defendants in the lead opinion in the appellate decision in this case, confuse the issue of a protectable interest with the legitimate business interest test. The two are not the same. The protectable interest doesn't require permanent or near-permanent relationships, it just requires the identification of some interest that's protectable and on the part of the employer. And neither the defendants in this case nor anyone else has cited any precedent to support the LBI test that the appellate court adopted in Kolar. One of the things that brought this issue up in the appellate court was the Sunbelt decision, and the Sunbelt decision I think is correct to the extent it found that there was no precedent for the LBI test. In addition to being unsupported legally, the LBI test does not make sense logically. It essentially prohibits non-compete agreements where they are needed the most with respect to sales employees, and it requires employers to show that they would not lose customers, that the customers are permanent, in order to be protected by a non-compete agreement. In essence, there's no rational reason to have the LBI test as the basis for a finding of the enforceability of a non-compete agreement. So what standard should be used to evaluate the enforceability of restrictive covenants? First, they should not be disfavored for sales employees. Those are employees oftentimes for whom they're needed the most. The employees, sales employees can have extensive customer contact, as the defendants did in this case. They can be heavily involved in developing contracts and customer relationships, which in many instances is one of the primary assets of a business. Second, an employer should be entitled to protect its goodwill, including customer relationships, through restrictive covenants, regardless whether the customer relationships are permanent or near permanent. A rejection of the LBI test would synthesize the case law in this area and make it consistent so that goodwill isn't treated one way in one context and differently in another. Third, courts should apply a totality of the circumstances test to determine whether the restriction at issue is reasonable, which is a separate issue from whether there's a protectable interest. And this is one point on which I think the Sunbelt decision is incorrect. In essence, in Sunbelt, the court was saying, you should evaluate the reasonableness of the restriction without reference to whether the restriction is reasonable, as to what the protectable interest is. I don't think you can do that. It can't be evaluated in a vacuum. And just to give you an example, if you have an employee who's involved in research and development who doesn't have any customer contact, as compared to a sales employee who has extensive contact, there may be different restrictions that are reasonable, depending on the nature of what that employee does for the employer. If we agree that a totality of the circumstance test should be applied, Mr. Banasack, is it your position that that requires a remand, I would take it, right? Yes, absolutely. And would that be for an analysis by the appellate court or a remand to the circuit court? I think it would be for an analysis by the circuit court, because the circuit court was the one who took the evidence at trial. I do think, at a minimum, that this court can enter a finding based on the record that there is a protectable interest here. And then the only question left, whether it's the appellate court or the trial court, is an evaluation of the reasonableness of the circumstances. I think if you look, actually, at the dissenting opinion in the appellate case, he did undertake that analysis, and I think that this court could do that as well. As an alternative, if the court decides that it's not appropriate for you to do that, a remand is what's required. Is it your position that the evidence at trial did not go to the enforceability of the restrictive covenant? At the June trial or the November trial? I don't know. There were two trials. There was a trial, a court trial in November of 2007 that dealt solely with the enforceability of the non-compete agreement. At that trial, the circuit court found that the agreements were not enforceable. There were other claims in the case dealing with breach of fiduciary duty and other issues that were tried separately in a jury trial in June of 2008. So, yes, the evidence that was presented at the November 2007 trial was the evidence that was focused on the enforceability of the agreements. So for that reason, the appellate court, if we so choose to apply that test, has enough in the record to tailor their decision applying the totality of the circumstances test? I think that they do, Your Honor. Now, the totality of the circumstances review can include consideration of factors like those that are set forth in the Agri-America case. Ultimately, whether the length and the scope of a non-compete agreement is reasonable should be evaluated based on the nature of the business and the employee's position. One key inquiry should be whether the employee is in a position to use the employer's goodwill and customer relationships to his advantage. Now, there are large, I think one of the concerns that I sense led to the development of this LBI test was a concern that non-competes would be applied too broadly. But even if you adopt the standards that we're asking you to adopt, there are large groups of employees who would have, would not have the ability to capitalize on an employer's goodwill. For example, employees working on an assembly line, the cash register clerk at the grocery store, and probably many others in between. So using this standard is not going to create a situation where every employee out there can be subject to a non-compete. It simply shifts the focus from the protectable interest to where it should be, which is evaluating the circumstances of the employee's employment and the nature of the employer's business. So the proper test should be, first, where it looks at whether there's confidential information or goodwill that can be protected. If the answer to that question is yes, then there's a protectable interest. The second inquiry is whether the restrictions are reasonable based on the business, the nature of the business, and the employee's position with the company, and that's the totality of the circumstances review. It shifts the focus from the front end, which is not the appropriate point at which to be evaluating those things, to the back end in terms of looking at the reasonableness of the restrictions. And with respect to what the court should do here, we would ask you to reverse the decision of the trial and the appellate court. The court should direct the trial court to find that reliable has a protectable interest here, and defendants essentially concede that. If you look at their brief, their response brief on page 34, it emphasizes the fact that they would be the go-to guys for the customers on behalf of reliable. They'd be available 24-7. They wanted to become part of the customer's team. It's all part of the goodwill that they developed on behalf of reliable while they were being paid by reliable. We did talk about this a little bit previously, but if you look at the appellate decision, the dissenting justice actually goes through the analysis of the reasonableness of the agreement. Again, I think that you can do that here. If you feel that that's inappropriate, then the relief here should be a remand to one of the lower courts to make that analysis. If not, if you make the reasonableness determination on your own based on the record, then there should be a remand to the trial court for a trial on damages on the non-compete related claims. All right, any questions? Thank you. I'm from Milwaukee, Wisconsin, right? I am. I bet he's a Bears fan. I'm going to be down here for the game on Sunday, actually. Good morning, Your Honors. My name is Tom Gregory, and I'm here with my co-counsel, Jack Lye and Maria Vasos, and we represent the defendants' appellees, Arnold Arradondo, Rene Garcia, and High-Rise Security Systems, LLC. We are asking this honorable court to affirm the decision of the appellate court and the decisions of the lower court. We do not agree with the issues as posed by counsel. The issues do not appear to be consistent with the issues raised in their brief. The issues we believe presented to this honorable court are, one, whether the long-standing legitimate business interest test and established precedent should be upheld in the State of Illinois for evaluating the enforceability of post-employment restrictive covenants, and, two, whether the Fourth District, which had previously applied to the State of Illinois, should be upheld. The Court has denied the LBI test, erred in rejecting the application of this test, so this morning we would like to address three points. First, that the legitimate business interest test is the proper test. Second, that the Fourth District's Sunbelt decision should be overruled. And third, that the decisions below should be upheld as their analyses of our case has shown. Directing your attention to our first point. Was there an opportunity to present evidence beyond the two-element legitimate business interest test? Yes, Your Honor. At the first trial, the November 2007 bench trial, the Court conducted a trial on the issue of the enforceability of the employment agreement, so all evidence that the plaintiff had was presented at that first bench trial. And was there any evidence that the appellee could not get in? The appellant presented all of their evidence, both sides presented all of their evidence on the issue of the enforceability of the employment agreement, and so we believe that they had a complete opportunity at that point to present their evidence. So if it were to go back, what new evidence would be presented? None to our knowledge, and as I will show during this presentation, we believe that any new arguments they're making now on appeal have all been waived as they were not raised as issues at trial. Counsel, just keeping with what Justice Freeman was talking about, forget new evidence for a minute. I think your position is that there's enough there, even if this Court decides that the totality of the circumstance test is a better test, there's enough there for either us to rule or the appellate court to rule. And you feel that the plaintiff fails even under that test, right? Isn't that part of your argument? Yes, Your Honor. We believe that the plaintiff has no protectable interest, whether we want to call it confidential information, near-permanent customer relationships, or give it any other name. All the evidence was produced at trial, presented at trial, in November of 2007. And so, yes, I agree with your question that even if this Court were to apply a new test called totality of the circumstances, that the decisions below do not warrant reversal or change. The first point, the legitimate... Yes, Your Honor. But post-employment restrictive covenants are generally against public policy, aren't they? Post-employment restrictive covenants are, that is correct, Your Honor. They are generally against public policy and can potentially be a severe restraint on trade. And they leave employees without any means of earnings for a living in deprived society, benefits of their skills and expertise. But sometimes, however, courts will enforce those agreements. But don't you think that the issue might be, in this situation, what does sometimes mean? Yes, that's a good question, Your Honor. Our study of these types of cases shows that once an employee's promised service is complete, the employer needs special justification to impose a restriction on the former employee. So, because otherwise there is this potential of being, above the restriction being against public policy because it imposes an undue hardship on the former employee from being able to make a living and could potentially affect other third parties such as customers who wish to do business with the former employer. So there's two dangerous potential effects of a restrictive covenant. The legitimate business interest test is the proper test in the State of Illinois for evaluating the enforceability of post-employment restrictive covenants. In Illinois, an employer must have a legitimate business interest at stake, such as confidential information or near-permanent customer relationships, before a court can enforce a covenant that bars a former employee from pursuing his or her line of business. And in Illinois, Your Honors, the LBI test has historically been upheld. I would like to start with the House of Vision v. Hyann, a 1967 case in which this Honorable Court stated, in the present case, the restrictions clearly extend far beyond those necessary to the protection of any legitimate interest of the plaintiff. In 1975, in Nationwide Advertising Service v. Kolar, the First District Appellate Court applied the principles established by this Honorable Court and held that there was no protectable interest in customers regardless of when the business obtained the customer. And then in 1989, in Capsonic Group v. Swick, the Second District Appellate Court held that a manufacturer of plastic and metal parts did not have confidential information in trade secrets or trade secrets in its product or services. And then, most recently in 2006, in Mohanty v. St. John Heart Clinic, this Honorable Court accepted the test. It expressed its disagreement with the plaintiffs in that case who argued that the clinic would be unable to handle its patient load when this Court stated, this argument is unresponsive to the issue here, whether the temporal restriction is greater than necessary to protect the defendant's interests. And this Honorable Court also stated that the time restrictions were reasonable and necessary to protect the clinic's interests. And Justice Freeman added in his dissenting opinion that, notwithstanding the above, I am not unsympathetic to the legitimate business interests that employers such as the defendants wish to protect, and later added that the majority focuses on business interests. So the LBI test, this test broadly covers all industries, is flexible, Your Honors, and can be applied to businesses that strictly render services or are strictly engaged in sales. And as you know, our appellate court has used and applied the LBI test in numerous cases over decades. The LBI test, or the general disfavor against restraints of trade, have a firm foundation in other states' case and statutory laws as well. By way of example, there's Massachusetts, Minnesota, Alabama, California, Montana, North Dakota, and Oklahoma, just to name a few. So the LBI test has been the law of the State of Illinois as well as many other states. And now directing your attention to our second point. The Fourth District Sunbelt decision should be overruled. In Sunbelt Rentals v. Ehlers, the Fourth District failed to do a complete restrictive covenant analysis, and in rejecting the time-tested LBI test was criticized by our Second District and not followed. As you can see from our review of the history of the cases discussed in our first point, Your Honors, the Sunbelt Court turned its back on decades of established law and is an anomaly. The Sunbelt Court failed because it looked at only the reasonableness of the time and territory restrictions, and the Sunbelt Court failed to first ascertain whether an employer even has a legitimate business interest in need of protection. So the Court left out the backdrop against which the reasonableness of the time and territory restrictions can be measured, without first ascertaining whether an employer has a legitimate business interest in need of protection. The analysis of the reasonableness of the time and territory restrictions, and this is where we agree with counsel, is done in a vacuum. And unfortunately, that is what occurred in Sunbelt. So if the... Counsel, although you prevailed, this is off the subject of Sunbelt a little bit, but although you prevailed below it, it seems like all three justices had a problem with the LBI test. Is that a fair statement? They had questions about the LBI test, but... And I know you have your three points, that's why I'd like you somewhere to address how even under the totality of the circumstance test you would prevail. Sure. The totality of the circumstances test, Your Honor, is simply a concept. It's a measure for... It's not an actual test. So that's the fault we see in even calling totality of the circumstances a test. In no way does it compare to the time-tested, valuable, legitimate business interest test. But it would require more than Sunbelt, right, which only looked at reasonableness. We don't even... Because of the fact that totality of the circumstances, that phrase comes up in cases, but it's confined as a concept for how you measure reasonableness in objective terms. I guess I'm trying to understand then, you want Sunbelt overruled. They only looked at reasonableness. You said you'd prevail under totality of the circumstances test, and now you're saying that's really not a test, but you're saying that that really involves reasonableness. So is the totality of the circumstance, for lack of a better word, test, the same as what was held in Sunbelt as far as you see? When you phrase it that way, I believe it could be argued such. And so then the problem with both Sunbelt and totality of the circumstances is there's no legitimacy component. And that's what the courts focus in on under the legitimate business interest test. Is there legitimacy in a business interest, but neither Sunbelt nor totality focus on that? If we were to adopt the totality of the circumstance approach, would that wipe out 35 years of case law? Not at all. Not at all. Because the legitimate business interest test, which has been used in 35 years of case law, would continue on and the court could continue to use the legitimate business interest test. It would not wipe it out. We would add that Corbin on contracts, whom they cite in their reply brief, states that neither scope of proscribed activity nor territory nor duration can be reasonable if there is no protectable interest to justify the covenant in any form. And we would point out that even the dissenting opinion below in our case recognized that the reasonableness of time and territory should still be evaluated in relation to a protectable interest and decline to follow Sunbelt. And we'd like to point out that if the Sunbelt holding were to become law in Illinois, then Illinois could potentially become one of the easiest states to enforce post-employment restrictive covenants. An organization could subject even its lowest level employees, such as a receptionist or a custodian, to post-employment restrictive covenants. And this would be against public policy and would be both an undue hardship and a severe restraint on trade. And now directing Your Honor's attention to our third point. The decisions below should be upheld as their analyses of our case has shown. We point out that at trial, they argued that the LBI test applied and that the employer satisfied the two traditionally recognized legitimate business interests of confidential information and near-permanent customer relationships. In fact, they wholly endorsed the LBI test and presented their evidence thinking they would prevail, but the trial court disagreed. At the appellate court level, in their initial brief, they again wholly endorsed the LBI test by arguing that they met and exceeded the burden of evidence required, but the appellate court disagreed. It should be pointed out that at the appellate court level, they raised issue for the first time that the trial court should have blue-penciled the employment agreement, but they waived that argument as the plaintiff never filed a complaint or a motion which requested blue-penciling prior to, of the employment agreement prior to the start of the November 2007 trial. In the November of 2007, the trial court conducted a bench trial, as mentioned before, on the enforceability of the post-employment restrictive covenants contained in the employment agreement. And after the November 2007 trial was concluded, the trial court read her extensive 10-page ruling into the record, but the plaintiff failed to make an offer of proof at that time with regard to blue-penciling, and so that was another opportunity waived. The plaintiff then failed to file a post-trial motion to ask for blue-penciling prior to the June 2008 jury trial, so that was another opportunity waived by the plaintiff. And in June of 2008, the trial court conducted a jury trial on all remaining claims. When counsel gives his rebuttal argument, this would be the perfect opportunity for this court to ask why an offer of proof wasn't made or why a post-trial motion wasn't filed after the November 2007 trial. And next, it should be pointed out that the plaintiff has improperly changed its argument and raised new issues several times while this case has been on appeal. The first improper change came after Sunbelt was issued, where they argued for the first time that courts should look at only the reasonableness of the time and territory restrictions and apply that new test. How could that be waived? At the time of the trial, Sunbelt wasn't out, right? They couldn't argue Sunbelt prior to Sunbelt. That's correct, Your Honor. That is correct. They could have thought of it on their own. They could have thought of just looking at reasonableness only and argued that at trial, but they never did. That's our point on that. The second improper change came after the dissenting opinion below was issued, where they argued in their PLA for a new test, which they called the totality of the circumstances test. And then the third improper change occurred when they filed their brief with this honorable court, where they argued for the first time that they have a protectable interest in their goodwill. We've discussed Sunbelt, so we've touched on totality of the circumstances. I would now like to point out that by now, maybe you've noticed a pattern that after the Sunbelt court rejected the LBI test, the plaintiff rejected the LBI test. After the dissenting opinion was issued on our case suggesting totality of the circumstances test, the plaintiff suggested a totality of the circumstances test. And in their brief to this honorable court, they said that the LBI test is narrow, but after we filed our responsive brief demonstrating that the LBI test is not narrow, but can be broadly applied, they suggested in their reply brief that the test should be broadly implied, applied to include goodwill, which I would like to address now. The first problem with their new goodwill argument is that goodwill is just a component of and falls under the pillar of near permanent customer relationships and already recognized and established legitimate business interest. The next problem with their new goodwill claim is that in the reseller industry, the plaintiff distributor actually has no goodwill. As the record shows, there are 75 distributors in the Chicago metropolitan area that sell fire alarm systems and fire protection equipment, and jobs are awarded based on lowest price. So the plaintiff doesn't sell anything unique, and it is common for electrical contractors in the industry to purchase equipment from more than one fire alarm distributor. So the plaintiff employer here has no goodwill. On the other hand, goodwill may exist and belong to Arnold and Renee, because the employer only reimbursed Arnold and Renee $50 a month, but Arnold and Renee had to buy their own personal computers to do their jobs. They had to buy and use their own cell phones to do their jobs, and they had to take prospective customers out to lunch on their own dime. Therefore, any goodwill that exists actually belongs to Arnold and Renee, and the plaintiff, therefore, has no legitimate business interest. And moreover, please remember that in our strictly sales setting, Arnold and Renee, who are fire alarm system salesmen, and the employer and HiRISE are distributors, simply distributors or resellers of fire protection equipment. So this is an industry where specifications for jobs are published and put out for bid by building owners or property managers, where sales of fire protection equipment by the distributors is based on lowest price, as the evidence abundantly showed, and where our customers don't... Wasn't that contested, though, whether it was always lowest price? Wasn't that a contested issue or a disputed issue? Yes, Your Honor, it was disputed by the plaintiff, but the evidence overwhelmingly, because of the numerous independent witnesses that testified in November of 2007, demonstrated that it was based on lowest price. Mr. Gregory, your time has expired. You may conclude. Sure. In closing, there were two trials, Your Honors. The plaintiff employer had two opportunities, and they do not deserve a third opportunity. The employer failed to prove that it had a protectable interest in either confidential information or near permanent customer relationships or any other business interest that could be found to be legitimate, and failed to prove evidence of solicitation, competition, or damages. And as Your Honors know, these failures cannot be cured on appeal. So the plaintiff's request for remand is not appropriate when the issue here is a question of law. We respectfully ask this Court to affirm the decisions below, and we thank you for your time and attention this morning. Thank you, Mr. Gregory. Just to respond to a couple of points raised by Mr. Gregory, with respect to the November trial, that trial was conducted with the based on everyone's understanding that the LBI test was the appropriate test. As discussed previously, until the Sunbelt case came out, there was controlling second district precedent, and from every other appellate district in the state of Illinois, that indicated that that was the test that needed to be applied. So there was no waiver here. There was some discussion about whether these are disfavored and whether they require some justification, and we don't dispute that, obviously. Non-compete agreements are disfavored. There has to be some justification for the restrictions that are being imposed on the employee, but that's the issue before the Court, is what is the test for determining that? And one of the problems with the defendant's argument, and also with the lead opinion in the appellate case, is they mix protectable interest with legitimate business interest test. The two are not the same. This is how we should enunciate the test. One, whether or not a determination should be made whether or not there was goodwill or confidential information, and then secondly, a determination should be made looking at all the circumstances. How is that different from the legitimate business interest test? Well, the problem with the legitimate business interest test, with respect to confidential information, I think it's the same. That's part of that test. The difference is under legitimate business interest test, the only goodwill or customer relationships that are deemed worthy of protection are those that are permanent or near permanent. So the only distinction we're talking about, we've got a lot of terms floating around here, the only distinction that we're talking about is the near permanent aspect of all of this. That's correct. That's the only difference. Our position is that customer relationships in general are worthy of protection. There shouldn't be a requirement that you need to show that they're permanent or near permanent in order to be able to have an enforceable noncompete agreement with an employee. So could there be some dispute about goodwill or customer relationships? There certainly could be. There could be disputes about whether the employee has the ability to benefit or utilize the goodwill of the employer, but that's all part of looking at the totality of the circumstances and not determining whether there's any protectable interest at all. But there's a two-step test. The first step is goodwill or confidential information, which sounds almost exactly the same as legitimate business interest, except in that context we've been looking at confidential information and near permanent relationships. The only difference you're talking about is we don't have to look at near personal, near permanent relationships. And then you agree, then the second step under both tests is to look at all the other circumstances, territory, all those other things. The only distinction here is near permanent relationships. Is that correct? That's correct, except that the concept of goodwill I think could include things other than simply customer relationships. I think that's a broader term. So I think under that definition, if you're talking about confidential information and goodwill, there may be other things beyond simply customer relationships that could be found worthy of protection. So there still has to be an inquiry as to whether or not the employer has a protectable business interest. It's just that we're going to talk about it, you want to talk about it in a different way. Is that right? That's correct. There still has to be an inquiry whether or not there is a protectable business interest. That's correct, although I think in most cases there would be a protectable business interest, particularly if you're talking about a business that's engaged in sales, because that is the primary asset of the business are the customer relationships that the business has, its good name, things like that. So I think it would be an unusual case where you would find that that is not present. And again, that shifts the focus to the second part, which is looking at what restrictions the employer is trying to impose on the employee and are those things that are really designed to protect the interests of the employer. And I do agree, I mentioned this previously, with respect to Sunbelt, I think that is one problem with it, you can't evaluate the reasonableness of the restrictions in a vacuum. You do have to look at how those tie into whatever interests the employer is trying to protect. Just to address very briefly a couple of waiver arguments, with respect to the blue penciling, the contract itself does contain a provision that allows blue penciling. We specifically asked for that to be done in the trial court, that issue was raised on appeal, so there's no waiver of that argument. And I do think that the defendants are mischaracterizing our position to the extent that they say, well, you're just asking for the LBI test to be applied more broadly. Again, I do think there's a separate, there's a big distinction between saying, you can only enforce non-compete agreements in situations where there are permanent or near permanent customer relationships and saying that the company's goodwill can provide a protectable interest. I think that's a much broader concept, but it shifts the focus to where it should be, which is on the reasonableness of the restrictions. And I think if you look at these cases that the defendants mentioned from other states, when they talk about a legitimate business interest, in those cases, they're not talking about permanent or near permanent customer relationships. They're talking about customer relationships and other things that would be categorized as goodwill. Generally, there's not a single case that I'm aware of that anyone has cited from any state which has adopted a test similar to the legitimate business interest standard that the appellate court applied first in COLAR. So it really is, it's a break with this court's prior precedent, it's a break with the prior decisions from the Illinois Appellate Court, and it's far different from the standards that are applied in other states. And contrary to defendants' suggestion, it's not going to lead to, as I discussed previously, a flood of these agreements being applied to anyone and everyone. There are still standards that have to be applied in terms of evaluating the reasonableness of the restrictions, again, based on the nature of the business and the employees, the employees' position with the company, that are going to limit these and, in fact, make broad categories of employees exempt from them. So, again, we would ask that either the court on its own review the record, issue a finding in favor of the plaintiffs in this case, or, at a minimum, remand the matter for consideration under the appropriate standard. And I don't think, if the court concludes that the inappropriate standard was applied here, that I think the evidence does show that the defendants lose, or, at a minimum, there's an issue to be resolved there. Because even assuming, and we dispute the evidence that price was key, but even assuming that that was the case, the undisputed evidence is that, in order to get the opportunity to bid these jobs to begin with, you have to have the established customer relationships, because otherwise you don't get invited to bid. The people don't go look in the yellow pages and pick names randomly out of the phone book. There's a small group of people that they will take quotes from for many of these jobs, and the way you get there is establishing the customer relationships. Thank you. Thank you, Mr. Gregory and Mr. Banasek, for your arguments today. Case number 111-871, Reliable Fire Equipment v. Arnold Arredondo, is taken under advisement. It's agenda number 24. Mr. Marshall, the Illinois Supreme Court stands adjourned.